UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SKILES DETRUDE f/k/a SKILES HANSEN, LLP, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CAUSE NO. 1:07-cv-940-WTL-DML ) |
| DOLLAR GENERAL STORES, | ) ) |
| Defendant. | ) |

**ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

This Cause is before the Court on the Defendant's motion for partial summary judgment. The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion to the extent and for the reasons set forth below.

The Plaintiff, Indianapolis law firm Skiles DeTrude ("Skiles"), represented Defendant Dollar General Stores ("DGS") from January 1996 through December 2006 in personal injury claims made against it in Indiana. Beginning on April 1, 2000, the relationship between the parties was governed in part by DGS's Billing Compliance Guidelines for Counsel ("Guidelines"), a document that set forth both the required format and the required content of invoices for attorney fees.

In its amended complaint, Skiles alleges that DGS failed to pay sixty-six of its invoices for legal services totaling $75,183.60.[1] In its briefs regarding the instant motion, DGS divides sixty of the invoices into several categories, each of which is discussed, in turn, below. DGS

---

[1]The Court notes that the amended complaint refers to exhibits but has no exhibits attached to it. Inasmuch as both parties refer in their summary judgment briefing to the exhibits that were attached to the initial complaint, the Court assumes that these are the exhibits to which the amended complaint refers.

admits that there is a question of fact as to whether the remaining six invoices have been paid,[2] and therefore does not seek summary judgment with regard to those invoices.

*Invoices Paid in Full*

DGS alleges that it has paid fourteen of the disputed invoices in full. Skiles now concedes that ten of them have been paid in full,[3] and summary judgment is **granted** as to those invoices. However, Skiles disputes that the other four invoices have been paid,[4] and the Court agrees with Skiles that DGS has not provided sufficient evidence with regard to these invoices to entitle it to summary judgment. There is nothing on the payment checks to link them to a particular invoice, and DGS has not provided any other accounting records or anything other than its conclusory statements to demonstrate that a particular check or checks satisfied a particular invoice. Accordingly, whether the four invoices in question have been paid by DGS remains a question for trial.

*Invoices Partially Paid*

DGS asserts–and Skiles concedes–that it paid a portion of each of fifteen invoices at issue.[5] DGS argues that it properly took deductions from these invoices pursuant to the

---

[2]In its initial brief, DGS listed eight invoices in the "question for trial" category; however, in its reply brief it included two of those invoices in the newly-created category of invoices that it had never received.

[3]The undisputed invoices in this category are: 12026 (Bauer); 12031(Krietmeyer); 12032 (Krietmeyer); 16267 (Hancher); 16278 (Lipinski); 16284 (Lipinski); 18043 (Ripley); 18052 (Wright); 18716 (Wilson); and 18725 (Wilson).

[4]The disputed invoices are: 16301 (Parrish); 16286 (McCracken); 18639 (Neible); and 18651 (Dillion).

[5]The invoices in this category are: 12023 (Garrison); 12024 (Garrison); 12028 (Geesa); 12034 (Krietmeyer); 12035 (Krietmeyer); 12042 (Williams); 16260 (Carroll); 16261 (Carroll); 16262 (Carroll); 16269 (Hancher); 16276 (Knapp); 16285 (Lipinski); 16289 (McCracken);

2

following provision in the Guidelines:

> When a firm submits fees or expenses, [sic.] which do not comply with the billing guidelines, [DGS] may decline to pay for any part of all of such items. [DGS] will deduct such fees and expenses from your invoices prior to payment.

However, DGS has not provided any information regarding why each deduction was taken, other than that it was recommended by its auditing firm. Accordingly, it is impossible to determine from the evidence of record whether the deductions were appropriate under the Guidelines, and summary judgment must be denied as to the unpaid portions of these invoices.

*Invoices Received Late*

DGS agrees with Skiles that it did not pay twelve invoices, but asserts that it was not obligated to do so because they were submitted outside of the time frame required by the Guidelines and therefore, under the provision set forth above, DGS had the option of refusing to pay them. The Court notes as an initial matter that seven of these invoices[6] involved work done prior to the April 1, 2000, effective date of the Guidelines, and neither party has provided the Court with the time frame requirements that were in effect prior to that date. Therefore, it is impossible for the Court to determine whether those seven invoices were untimely, and summary judgment is denied as to those seven.

With regard to the remaining five invoices that DGS alleges were unpaid because they were submitted late,[7] it appears that they did violate the Guidelines' requirement that invoices be

---

16290 (McCracken); and 16299 (Parrish).

[6]The following invoices are in this category: 16292 (Parrish); 16293 (Parrish); 17082 (Sexton) 17083 (Sexton); 17084 (Sexton); 17085 (Sexton); and 17086 (Sexton).

[7]The invoices in this category are: 12214 (Mann); 16264 (Hancher); 16277 (Lipinski); 18025 (Kendall); and 18026 (Kendall).

submitted quarterly and by "no later than the last day of the second month from the end of the quarter for which the firm is billing."[8] Skiles argues that DGS waived its right to refuse to pay for late invoices by consistently failing to strictly enforce various provisions of the Guidelines, pointing to several specific examples among the sixty-six invoices at issue in this case in which DGS paid invoices that were submitted long after they should have been under the Guidelines, as well as the fact that DGS had an agreement with its auditing firm that gave the firm authority to pay certain late invoices and required it to obtain approval from DGS before processing others. "[W]aiver is the intentional relinquishment of a known right," *HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Services, Inc.*, 846 N.E.2d 318, 324 (Ind. App. 2006), and whether a party to a contract has, by its behavior, waived the right to enforce a particular contract provision ordinarily is a question of fact. *Id.*; *see also Harrison v. Thomas*, 761 N.E.2d 816, 820 (Ind.2002). The Court finds that Skiles has demonstrated that there is a question of fact with regard to whether DGS waived its right to enforce the billing time frame in the Guidelines with regard to the invoices at issue by its policies and its course of conduct as to other late invoices. Therefore summary judgment as to the late invoices is not appropriate.[9]

---

[8]One of these invoices, 12214 (Mann) contains some entries that were "late" under the Guidelines and others that were not; regardless, it violated the Guidelines' requirement that work be billed quarterly because it bills for work done from November 2000 to November 2001.

[9]DGS argues that the Guidelines contain a non-waiver clause. While such clauses generally are enforceable in Indiana, the Court disagrees that DGS's use of the term "may decline to pay" in the relevant provision of the Guidelines constitutes an enforceable non-waiver clause.

*Invoices Without Claim Numbers*

DGS concedes that it failed to pay nine invoices,[10] but alleges that it was justified in doing so because they either did not contain a claim number or contained an invalid claim number, in violation of a provision in the Guidelines that required all invoices to be accompanied by a cover sheet that contained the claim number for which the invoice was being submitted. The Court disagrees with DGS's reading of the Guidelines. The claim number requirement is contained in the "Format" section of the Guidelines. Elsewhere the Guidelines provide that "[w]hen a firm submits its bills outside of the required format, [DGS] may be unable to process the claim at all and will return it to the firm for correction or supplementation." Thus, by the plain language of the Guidelines, DGS's remedy when it received an invoice without a claim number (or with any other "format" issue) was not refusal to pay, but rather returning the invoice for correction or supplementation. Therefore, DGS is not entitled to summary judgment with regard to this category of invoices.

*Statute of Limitations*

With regard to eight invoices,[11] DGS argues that the date Skiles filed this case–June 17, 2007–was outside of the applicable limitations period and therefore its claim is time-barred as to those invoices. As an initial matter, the parties disagree with regard to which statute of limitations applies in this case. DGS refers to Ind. Code 34-11-2-9, which sets forth a six-year

---

[10]The invoices in this category are: 17663 (Collette); 17659 (Dillion); 17660 (Dillion); 17665 (Everett); 17666 (Everett); 17699 (Kordes); 17700 (Kordes); 17701 (Kordes); and 17702 (Kordes).

[11]This category includes the following invoices: 8925 (Tishner); 11172 (Ward); 11212 (Johnson); 11272 (Woods); 11260 (Ward); 11265 (Tishner); 16395 (Tishner); and 11412 (Woods).

limitations period for actions upon promissory notes, bills of exchange, or other written contracts for the payment of money. However, neither party has submitted to the Court any written contract that governed DGS's payments to Skiles; the Guidelines govern only Skiles's bills to DGS. Therefore, it does not appear to the Court that Ind. Code 34-11-2-9 applies to this case; rather, the Court agrees with Skiles that the applicable statute is Ind. Code 32-11-2-7(1), which applies to actions on accounts. This is a distinction without a difference, however, because the limitations period under either statute is six years.

      The more interesting and relevant question is when Skiles's claim accrued with regard to the unpaid invoices. DGS argues that a claim accrued as to each invoice "[a]s soon as [DGS] failed to remit payment on [that] specific invoice." DGS Reply at 11. The Court notes that this is not synonymous with the date of each invoice, inasmuch as DGS had not failed to remit payment until some time after the invoice was submitted. There did not appear to be any agreement between the parties with regard to how long DGS had to remit payment for each invoice, and DGS does not indicate at what point in time after the submission of each invoice it believes the claim regarding that invoice accrued.

      Skiles, on the other hand, argues that the parties' relationship was a "continuing open account" and therefore no cause of action for non-payment accrued until the parties' attorney-client relationship was severed in December 2006. The Court need not decide whether the parties' relationship fits neatly under the definition of a "continuing open account," which is an account "in which some item of contract is not settled by the parties, or where there have been running or current dealings between the parties and the account is kept open with the expectation of further dealings." *Troyer v. Cowles Products Co.*, 732 N.E.2d 246, 247 (Ind. App. 2000). Rather, the attorney-client relationship between the parties is the operative fact in determining

when Skiles's claim accrued.

The general rule, in Indiana and elsewhere, has long been that "[t]he employment of an attorney to represent a party to an action is a single employment, and the statute of limitations does not begin to run against his claim for services until such action or suit has terminated-until judgment has been rendered in the cause in which he has been retained." *Felt v. Mitchell*, 88 N.E. 723, 723 (Ind. App. 1909) (citing numerous cases from various jurisdictions); *see also Pellettieri, Rabstein and Altman v. Protopapas*, 890 A.2d 1022, 1026 (N.J. Super. A.D. 2006) ("The generally accepted rule is that an attorney's cause of action for legal fees accrues, for statute of limitation purposes, when the suit is completed or the attorney-client relationship is terminated, whichever happens first.") (also citing numerous cases from various jurisdictions). Therefore, DGS's argument that a separate claim accrued as to each unpaid invoice clearly is incorrect; at the very least, no cause of action accrued with regard to a particular claim until Skiles had completed its work as to that claim.

However, the Court agrees with Skiles that the relationship between the parties was not such that it makes sense to treat each individual claim separately for statute of limitations purposes. Invoices were bundled and sent quarterly, not as each individual claim was resolved, and payments for multiple claims were sometimes made with one check. Further, the payments themselves do not appear to have been accompanied by claim numbers or claimant's names which tied them to a particular claim. In other words, it appears that DGS and Skiles both thought in terms of the aggregate amount owed to Skiles for his services for a given time period, rather than the amount owed for a particular claim. Had Skiles been retained separately each time a claim was made against DGS to represent it for that particular claim then the analysis would be different, but in fact all evidence suggests that DGS and Skiles viewed their

relationship as one continuous attorney-client relationship, rather than a serious of discrete relationships. The Court holds, then, that Skiles's cause of action as to any of the unpaid invoices did not accrue until the termination of the parties' attorney-client relationship at the end of 2006.[12] *See* 60 A.L.R.2d 1008 ("Where an attorney renders continuous services, deemed to be entire, under an express or implied contract which does not fix the term of employment or the time for payment, the statute of limitations will not begin to run against a claim for fees and costs until the employment is ended, that is, the attorney-client relationship is dissolved by death, discharge, proper withdrawal, or completion of the services."). The motion for summary judgment on statute of limitations grounds is therefore denied.

*Invoices Never Received*

For the first time in its reply brief, DGS asserts that it never received certain of the invoices in question[13] and therefore it is entitled to summary judgment as to those invoices for that reason, in addition to the reasons it put forward in its initial brief as to those invoices.[14] The Court finds that it is a question of fact whether each of these invoices was received, and

---

[12]This holding is consistent with the reason for the rule regarding the accrual of claims by an attorney for fees, which is an acknowledgment of the fiduciary duty that a lawyer has toward his client. In this regard, the Court finds persuasive the reasoning in *Pellettieri, Rabstein and Altman*, 890 A.2d at 1027, which noted that a "contract for legal services is not like other contracts" because there are ethical constraints on an attorney's right to sever the contractual relationship, as well as on the attorney's right to sue a client for unpaid fees during the term of the relationship.

[13]The invoices in question are: 16292 (Parrish); 16293 (Parrish); 12214 (Mann); 18026 (Kendall); 18025 (Kendall); 17086 (Sexton); 17082 (Sexton); 17083 (Sexton); 17084 (Sexton); 17085 (Sexton); 17045 (Allen); 18051 (Wonder); 11212 (Johnson); 8925 (Tishner); 11265 (Tishner); 16395 (Tishner); 11172 (Ward); 11260 (Ward); 11272 (Woods); and 11412 (Woods).

[14]As noted previously, DGS originally took the position that there was a question of fact regarding whether two of these invoices had been paid. As to the others, DGS alleged that some were received late and others were barred by the statute of limitations.

therefore DGS is not entitled to summary judgment as to any invoice on this ground.

## Conclusion

For the reasons set forth above, DGS's motion for partial summary judgment is **GRANTED** with regard to the following invoices: 12026 (Bauer); 12031(Krietmeyer); 12032 (Krietmeyer); 16267 (Hancher); 16278 (Lipinski); 16284 (Lipinski); 18043 (Ripley); 18052 (Wright); 18716 (Wilson); 18725 (Wilson). Summary judgment is **DENIED** with regard to the remaining invoices at issue.

SO ORDERED: 02/27/2009

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Christopher Allan Moeller
PRICE WAICUKAUSKI & RILEY
cmoeller@price-law.com

William N. Riley
PRICE WAICUKAUSKI & RILEY
wriley@price-law.com

Richard Robert Skiles
SKILES DETRUDE
rskiles@skilesdetrude.com

Joseph N. Williams
PRICE WAICUKAUSKI & RILEY
jwilliams@price-law.com